1
2
3
4
5
6
7

**O**
**JS-6**

# United States District Court
# Central District of California

11 | JAMES JACOBSEN,

Plaintiff,

v.

CITY OF CALABASAS; ANTHONY M. COROALLES; ROBIN PARKER; JOHN BINGHAM; FRED GAINES; MARY SUE MAURER; DAVID J. SHAPIRO; and JAMES R. BOZAJIAN,

Defendants.

Case № 2:15-cv-08859-ODW (MRW)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING THE MOTION TO STRIKE [21, 22]**

20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiff James Jacobsen, a former employee of Defendant City of Calabasas, brings suit under 42 U.S.C. § 1983 and state law and alleges that the City and its officials conspired to deprive him of his liberty and property interests.  Now pending before the Court is Defendants' Motions to Dismiss and to Strike portions of Jacobsen's Complaint.  (ECF Nos. 21–22.)  For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Motion to Strike as moot.

## II.   FACTUAL BACKGROUND

Until his termination on November 8, 2013, Jacobsen served as a Building Engineer for the Administrative Services Department of the City of Calabasas. (Complaint ("Compl.") ¶ 3, Not. of Removal, Ex. 2, ECF No. 1-2.)  Throughout his employment and at the time of his termination, his employment was governed by City Resolution No. 2009-1191, which adopted the City's Human Resources Guidelines Manual and tasked the City Manager with its implementation.   (*Id.* ¶¶ 4–5.) Defendant Anthony M. Coroalles served as City Manager during the duration of Jacobsen's employment.  (*Id.* ¶ 7.)  In addition to Coroalles, Defendant Robin Parker was the City's HR Director and Administrative Services Director; John Bingham was the Senior Management Analyst; Fred Gaines was the City's Mayor; David Shapiro was the City's Mayor Pro Tempore; and Mary Sue Maurer and James R. Bozajian served on the City Council.  (*Id.* ¶¶ 8–13.)  (hereinafter, the Court will collectively refer to these individuals as the "City Officials.")

Jacobsen's problems began with an alleged workplace vendetta.   Jacobsen claims that, throughout his employment, Parker slandered his name and published untrue statements about his qualifications and job performance in an effort to pad his disciplinary file and build a case for termination.  (*Id.* ¶¶ 17–18.)  On or about October 28, 2013, Parker authored a Notice of Intent to Discipline Jacobsen.  (*Id.* ¶ 20.)  In turn, Jacobsen offered a timely Rebuttal to the Notice, detailing Parker's

"unreasonable expectations, her micromanagement of his duties, her personal animosity towards [him], her general incompetence, and the lack of professional and technical qualifications of both [Parker and Bingham]."  (*Id.* ¶ 23.)  Five days after submitting his Rebuttal, Jacobsen was fired.  (*Id.* ¶ 26.)

In accordance with the procedures set forth in the HR Guidelines, Jacobsen filed an appeal of his termination on or about November 15, 2013.  (*Id.* ¶ 27.) Defendant Coroalles granted the appeal request but, given the potentiality of him serving as a witness, he recused himself from presiding over the appeal.  (*Id.* ¶ 28.) Without the City Manager as the Hearing Officer for the matter, the City referred the appeal to an outside attorney who would serve as the independent Hearing Officer. (*Id.* ¶ 29.)  In January 2014, the Hearing Officer held a five-day evidentiary hearing, where Jacobsen and his former supervisors offered exhibits and testimony.  (*Id.* ¶ 30.) Throughout this proceeding, the Hearing Officer assured Jacobsen that, should he prevail, he would be awarded back pay from the date of his termination until the decision date and/or reinstatement of his position.  (*Id.* ¶ 32.)  Ten months later, on October 3, 2014, the Hearing Officer issues his decision and found that the City lacked good cause to terminate Jacobsen.  (*Id.* ¶ 34.)  The order further specified that Jacobsen was entitled to reinstatement to his position as Building Engineer, back pay from November 8, 2013, and a reinstatement of all benefits.  (*Id.*)

Jacobsen never received the full benefits of the order, however.  Unbeknownst to him and less than two weeks after the filing of his appeal, Coroalles authored a report for the City Council recommending the elimination of the now-vacant Building Engineer position.  (*Id.* ¶ 36.)  The recommendation was set for decision at the December 11, 2013 City Council meeting; the Council granted it on that day.  (*Id.* ¶¶ 39–40.)  Neither the recommendation itself nor the published agenda for the City Council meeting noted that Jacobsen's appeal was currently pending.  (*Id.* ¶ 39.)

Jacobsen learned of the City's elimination action in an October 15, 2014 letter from the City, in which the City told him that, while his successful appeal entitled him

to back pay, benefits, and reinstatement, that back pay would only cover the time between his termination and the elimination of the position on December 11, 2013. (*Id.* ¶¶ 41–43.)  In total, Jacobsen only received $6,586.78 from the City.  (*Id.* ¶ 43.)

On or about April 14, 2015, Jacobsen filed a "Claim for Damages" with the City, pursuant to the administrative exhaustion requirements under Government Code § 905.  (*Id.* ¶ 82.)  However, on April 27, 2015, the City rejected the claim, deeming it untimely.  (*Id.* ¶ 83.)  Jacobsen refutes the contention that the filing was untimely.  (*Id.* ¶¶ 82–83.)

Then, on September 25, 2015, Jacobsen filed suit against Defendants in the Superior Court of Los Angeles.  (Not. of Removal, Ex. 2, ECF No. 1-2.)  In his pleading, Jacobsen claims that the elimination of the Building Manager position and subsequent reassignment of its duties to other employees with less seniority violated Government Code § 45100, which requires that, "[i]f the legislative body determines that a reduction in personnel is necessary for economy reasons, it shall observe the seniority rule in putting the reduction into effect."  (Compl. ¶¶ 44–45.)  He further claims that Defendants conspired to intentionally withhold information about the position elimination in efforts to circumvent the appeals process, and that their refusal to comply with the appeal order (awarding him full back pay, benefits, and reinstatement) deprives him of his property interest in his job; that the City lacked justification or legal authority to eliminate the Building Engineer position; and that any grounds the City may offer for the elimination are mere pretext for retaliation. (*Id.* ¶¶ 47–51.)  Jacobsen brings claims against the City and its officials for (1) deprivation of property rights without due process; (2) failure to implement appropriate policies, customs, and practices; (3) conspiracy; (4) violations of Article I, Section 7 of the California Constitution; (5) retaliation; and (6) injunctive relief.  (*Id.* ¶¶ 86–140.)

Defendants removed the action to this Court on November 13, 2015.  (ECF No. 1.)  On December 17, 2015, Defendants then moved to dismiss the action in its

entirety or, in the alterative, to strike portions of the Complaint.  (ECF Nos. 21–22.)
Jacobsen filed a timely opposition, and Defendants tendered a timely reply.  (ECF
Nos. 24–27.)  The Court held a hearing on the matter on March 14, 2016.  (ECF No.
29.)  The matter is now before the Court for decision.

## III.    LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a
complaint for lack of a cognizable legal theory or insufficient facts plead to support an
otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the
minimal notice pleading requirements of Rule 8(a)(2).  *Porter v. Jones*, 319 F.3d 483,
494 (9th Cir. 2003).  The factual allegations "must be enough to raise a right to relief
above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
Essentially, the complaint must "contain sufficient factual matter, accepted as true, to
state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009).

The determination as to whether a complaint satisfies the plausibility standard is
a "context-specific task that requires the reviewing court to draw on its judicial
experience and common sense."  *Id.* at 679.  A court is generally limited to the
pleadings and must construe all "factual allegations set forth in the complaint . . . as
true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d
668, 688 (9th Cir. 2001).  However, a court need not blindly accept conclusory
allegations, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v.
Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Generally, a court should freely give leave to amend a complaint after granting
a dismissal.  Fed. R. Civ. P. 15(a).  However, a court may deny leave to amend when
"the court determines that the allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    DISCUSSION

Defendants move to dismiss Jacobsen's Complaint in its entirety.  Accordingly, the Court will address each cause of action in turn.

### A. Claims 1–4: Violations of First, Fifth, and Fourteenth Amendments

Jacobsen sues the City, several of its employees, and the elected Mayor, Mayor Pro Tempore, and members of the City Council under 28 U.S.C. § 1983.  (Compl. ¶¶ 86–118.)  To state a cause of action for damages against an individual officer under Section 1983, a litigant must allege that: (1) a defendant violated a right secured by the Constitution or laws of the United States; and (2) defendant committed this violation while under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Where an officer engages in violative activity as part of his or her official capacity, that person is acting "under the color of state law."  *Id.* at 49–50; *see also Monroe v. Pape*, 365 U.S. 167, 172 (1961) overruled on other grounds by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

To state a cause of action against a municipality, a litigant must allege that (1) the plaintiff was deprived of a constitutional right and (2) that the municipality or government entity had a policy or custom that (3) amounted to deliberate indifference to a plaintiff's constitutional rights and (4) was the moving force behind the alleged constitutional violation.  *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (citing *Monell*, 436 U.S. at 690).  Once a litigant shows a constitutional violation, "municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'"  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013)

(quoting *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir. 2010)).  Where a litigant alleges liability based on a public entity's failure to train its employees, that lack of training must meet the "deliberate indifference" prong of the *Monell* analysis—which requires that the lack of training be so "obvious [that] the failure to do so made a violation of constitutional rights likely."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

In his Complaint, Jacobsen alleges that the City and its officials deprived him of his Fourteenth Amendment right to due process, Fifth Amendment right to just compensation upon the taking of his property, and First Amendment right of free speech.  (Compl. ¶¶ 90a–b, 95, 100–104, 111–112.)  He also alleges that each City official conspired to eliminate the Building Manager position in violation of his constitutional rights.  (*Id.* ¶ 116.)  In an attempt to make the City liable for his injuries, Jacobsen claims that the elimination of the Building Engineer position after his termination constituted a "ratification" of the unlawful conduct, and thus the City's adoption of the termination recommendation is, *ipso facto*, proof of the City's "failure to supervise" its representative officials.  (*Id.* ¶¶ 91–94.)  He also claims that the City had an unconstitutional policy, either explicit or implicit, of ignoring its own HR Guidelines and depriving persons of their property rights.  (*Id.* ¶ 109.)

With claims against multiple Defendants, the Court will address municipal liability and individual officer liability separately.

### 1. Municipal Liability

Defendants urge the Court to dismiss all claims against the City of Calabasas, as Jacobsen's Complaint fails to state a claim.  (Mot. 7–18; Reply 9.)  Without a cognizable constitution violation, the Court agrees.

The first step in the municipal liability inquiry is whether a public entity has, in fact, violated an individual's constitutional rights.  *Monell*, 436 U.S. at 690.  Here, Jacobsen cannot state a claim for any constitutional violation at the hands of the City

or its Officials, and therefore Jacobsen's First and Third causes of action are **DISMISSED**.

### i.  Fourteenth Amendment Due Process

Jacobsen claims that he has a protected property interest in his continued employment with the City, and therefore any deprivation of that property interest violates his due process rights.  (Opp'n 3, ECF No. 24.)  The Court holds that while Jacobsen may have had a property interest in his position, he has failed to state a claim for a due process violation.

In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court stated that a "person's interest in a benefit" is a constitutionally protectable property interest if there are "rules or mutually explicit understandings that support his claim of entitlement."  *Id.* at 601; *see also Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.")  Where a person has property interest, the state must provide due process before revoking the entitlement. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.")

### a.  The Property Right

Parties begin their dispute with a fight over the structure of the City's employment scheme, with Jacobsen arguing that the City uses a civil service system that bestows a property interest in one's employment, and Defendants insisting that the City uses a personnel system.  (Mot. 10–11; Opp'n 3–4.)  For support, Defendants merely point to the fact that the City's Municipal Code refers to its employment system as a "personnel system," and offers nothing to define what that means, exactly. (*See* Defs.' Request for Judicial Notice ("RJN"), Ex. 4, ECF No. 23.)[1]  The Court

---

[1] The Court judicially notices the City's Municipal Code, City Council resolutions, and HR Guidelines.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (courts may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint and

finds this argument to be nothing more than a semantic exercise; no matter the terminology, the protections provided by the City show that employees like Jacobsen have a property interest in their jobs.

Whether an employee should be accorded minimal due process safeguards prior to discharge "ought not, and does not, turn on the eventuality that he is employed in the civil service system[;]" instead, the question turns on whether the employee had a protected property interest in the position. *Mendoza v. Regents of Univ. of Cal.*, 78 Cal. App. 3d 168, 173–74 (1978). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents*, 408 U.S. at 577. Thus, the Court's task is to inspect state law and the City's employment rules and regulations to determine whether they support Jacobsen's claim of entitlement. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 369–70 (9th Cir. 1990).

Several factors weigh in favor of Jacobsen's argument. First, the HR Guidelines define a dismissal as a termination *for cause*, and it is "widely recognized that if the employee is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection." *Mendoza*, 78 Cal. App. 3d at 175 (citing *Arnett v. Kennedy*, 416 U.S. 134, 152 (1974); *see also Williams v. Cnty. of Los Angeles*, 22 Cal. 3d 731, 736 (1978); *Townsel v. San Diego Metro. Transit Dev. Bd.*, 65 Cal. App. 4th 940, 946 (1998). (HR Guidelines 2.12, Supplemental RJN in Support of Reply ("Supp. RJN"), Ex. 6, ECF No. 28.) While the definition does not say that employees may *only* be dismissed for cause, the fact that the HR Guideline's "Lay Off" definition refers to separations for "non-disciplinary reasons" reinforces the

---

(2) matters in the public record); see also Fed. R. Evid. 201(b) (a judicially noticed fact must be one that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

City's intentions: where an employee is to be let go, it is to be for disciplinary cause—or it is to be considered an economically-motivated lay off.  (*See id.* 2.17.)  *See also Perry*, 408 U.S. at 601 (concluding that the absence of an explicit contractual provision does not necessarily foreclose the possibility that an employee has a property interest in his or her position).

Secondly, the Court looks to the protections the City affords its employees.  Here, employees are to be given notification of any proposed disciplinary actions and a hearing and appeal of any such action.  (*Id.* 10.02–10.05.)  The existence of procedural safeguards can be an indication that safeguards are due.  *See Mendoza*, 78 Cal. App. 3d at 174.  Here, the Court cannot deny that the HR Guidelines provide such safeguards (in fact, Jacobsen used these very safeguards to successfully challenge his dismissal).

Accordingly, the Court determines that Jacobsen did have an entitlement to his government position, and thus must be accorded certain procedural protections.

### b.  The Process Due

Once the government confers a property right, it may not deprive a person of that right without certain procedural safeguards.  *Brown v. City of Los Angeles*, 102 Cal. App. 4th 155, 170 (2002) (citing *Coleman v. Dep't of Personnel Admin.*, 52 Cal. 3d 1102, 1114 (1991)).  Here, Jacobsen was given (1) notice of his employer's intent to discipline him; (2) the opportunity to rebut the charges against him; and (3) a post-removal hearing by which he could challenge the evidence against him and seek back pay and/or reinstatement.  (Compl. ¶¶ 20, 23, 27–31.)  Each of these steps appropriately protected Jacobsen's property interest—quite well, considering how he emerged victorious upon appeal—and thus the Court finds no Fourteenth Amendment violation.  *See Townsel*, 65 Cal. App. 4th at 951 (transit officer had due process right to post-termination evidentiary hearing).

Moreover, there can be no violation of due process when a plaintiff receives a post-deprivation remedy for the random and unauthorized acts of government officials

that deprive an individual of property. *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981). Taking Jacobsen's allegations as true, Parker padded a human resources file with untrue accusations so she could fire him. (Compl. ¶¶ 17–26.) In no universe would Parker's actions be considered proper municipal procedure, and thus the violation is a "random and unauthorized act"—but one that, when the government provides an adequate post-deprivation remedy, does not run afoul of the Constitution. *Parratt*, 451 U.S. at 543–44. Again, an appeals process that ultimately leaves Jacobsen the victor is far from an inadequate remedy, and thus Jacobsen's termination did not violate his due process right.

Nor did the City's choice to eliminate the Building Manager position violate Jacobsen's due process rights. Even with a property interest in his employment, he does not maintain that interest in perpetuity or where the City wishes to downsize as a cost-saving measure. Jacobsen's successful appeal, in effect, retroactively placed him on the City's payroll and put him in the Building Engineer's office. Yet municipalities are fully within their rights to eliminate positions in the interests of ever-tightening purse strings. In effect, it is as if the City laid him off; therefore, the procedural safeguards for terminations for cause would not apply.

Public entities have the power over the offices they create, including the power to eliminate them. *Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997); *see also Higginbotham v. City of Baton Rouge*, 306 U.S. 535, 538 (1939) (stating that a state legislature (or City Council) may "at [its] pleasure create or abolish [offices], or modify their duties. It may also shorten or lengthen the term of service."). Importantly, "[w]hen a state alters a state-conferred property right through the legislative process, 'the legislative determination provides all the process that is due.'" *Rea*, 121 F.3d at 485 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982)); *see McMurtray v. Holladay*, 11 F.3d 499, 503–04 (5th Cir. 1993) (on summary judgment, finding that although the legislation extinguished the plaintiffs' property interest, the legislative process provided all the process that was due); *Gattis*

1    *v. Gravett*, 806 F.2d 778, 781 (8th Cir. 1986) (holding that legislative alteration or
2    elimination of previously conferred property interest does not violate due process).
3    The City posted a public agenda that notified interested citizens of a pending
4    recommendation to eliminate the Building Engineer position.  (Compl. ¶¶ 39–40.)
5    Jacobsen could have attended that City Council meeting and voiced his concerns, but
6    he was absent and his concerns went unheard.  That he did stop the elimination is not
7    to say that the City Council did not provide a procedurally sound legislative avenue or
8    violated his due process rights.

9         While the Court sympathizes with Jacobsen, there is no indication that the City
10   Council's resolution and adoption process failed to provide the minimum due process
11   due to him.   Only where the legislative process is wholly irrational, arbitrary, or
12   otherwise defective will a court find a due process violation upon the elimination of a
13   government position.   *Rea*, 121 F.3d at 485 (citation omitted).   There are no such
14   indicia here.   While Jacobsen vigorously maintains that Defendants on the City
15   Council *must have known* of his recent termination and that the elimination of the
16   position *must have been* personal, he alleges no facts to support this theory.[2]  (*See*
17   Compl. ¶¶ 46–48.)   *See Darling v. Kansas Water Office*, 245 Kan. 45, 50 (1989)
18   (finding an unconstitutional deprivation of property rights where legislature identified
19   the seventeen specific individuals in the civil service and marked their positions for
20   elimination).   Moreover, Jacobsen does not claim that Defendants owed a duty to
21   inform him of the potential elimination; again, the City Council makes all agendas
22   public, and Jacobsen could have learned of the City's intent to eliminate the position
23   this way and made his case before the City Council.  (*See* Reply 2 n.1.)

24        Accordingly, the Court finds no facts to support Jacobsen's deprivation of due
25   process claim.

26

27   [2] Nor does the Court believe that the City Council's prior knowledge of the appeal would render the
     vote to eliminate the position arbitrary or irrational—or even actionable.  *See infra*, Section 2(i)
28   (legislative bodies are absolutely immune from suit when acting in their legislative capacity, and
     courts will not delve into the subjective reasoning behind legislative decision-making).

### ii. Fifth Amendment Takings Clause

The Court summarily rejects any and all of Jacobsen's arguments that imply that the Takings Clause protects him here. The Amendment, which provides that no private property shall be appropriated for public use without just compensation, is wholly inapplicable to municipal employment. *See* U.S. Const. Amend. V. Just because the government did the theoretical "taking" does not give Jacobsen license to bring such a frivolous claim. (*See* Compl. ¶¶ 90b, 104b.)

### 2. Individual Officer Liability

#### i. City Council Members and City Manager Coroalles

While Section 1983, on its face, broadly creates liability for local officers who violate the Constitution while acting under the color of state law, the Supreme Court has consistently held that all officers possess some degree of immunity from suit. *See* Erwin Chemerinsky, Federal Jurisdiction 561 (7th ed. 2016); *see also Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (noting that municipalities, unlike individual officers, may not claim immunity).

Defendants here invoke legislative immunity and urge this Court to dismiss all claims against Defendants Gaines, Shapiro, Maurer, Bozajian, and Coroalles.[3] (Mot. 18–20.) Surprisingly, even though Defendants devote ample time to their immunity arguments, Jacobsen offers no rebuttal. The Court takes Jacobsen's silence as a tacit acknowledgement that Defendants' arguments must win the day, and agrees that the City Manager and members of the City Council are wholly immune from suit.

It is well-settled that federal and state legislators are absolutely immune from civil liability under Section 1983 for their legislative actions. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 577 (9th

---

[3] Even where Jacobsen attempts to assign liability to these Defendants based on his initial termination, and not based upon the legislative process that eliminated the Building Engineer position, those arguments likewise fail. The City Council members—Gaines, Shapiro, Maurer, Bozajian, and Coroalles—were not involved in Jacobsen's termination, and thus Jacobsen clearly has failed to state a claim against them. (*See* Compl. ¶¶ 20–21, 26.)

1   Cir.1984); *Traweek v. City & Cnty. of San Francisco*, 659 F. Supp. 1012, 1030–31
2   (N.D. Cal. 1984), aff'd in part, vacated in part on other grounds, 920 F.2d 589 (9th
3   Cir. 1990).  Local officials, like Defendants here, are also absolutely immune from
4   suit when they are acting in a legislative capacity—no matter the potentially nefarious
5   reasons for their actions.  *Id.*

6        The facts in *Bogan* are illustrative and precisely on point.  In that case, Janet
7   Scott-Harris served as a health administrator for Fall River, Massachusetts for four
8   years. 523 U.S. at 46.  After receiving complaints that an employee temporarily under
9   her supervision, Dorothy Biltcliffe, had been repeatedly hurling racial and ethnic slurs
10  at her colleagues, Scott-Harris sought her termination.  *Id.* However, Biltcliffe called
11  in a few favors borne of her political connections and, after a City Council hearing,
12  accepted a settlement under which she would be merely suspended without pay for
13  sixty days.  *Id.* at 46–47.  The Fall River Mayor, Daniel Bogan, later further reduced
14  this punishment.  *Id.* at 47.  Meanwhile, as Biltcliffe's charges were pending, Mayor
15  Bogan prepared a new city budget for the fiscal year—a budget that eliminated the
16  division of which Scott-Harris was the sole employee.  *Id.*  The City Council approved
17  the budget, which was then signed into law.  *Id.*  Scott-Harris then sued Bogan and
18  other city officials, including members of the City Council, under Section 1983,
19  claiming that her termination was retaliation for exercising her First Amendment
20  rights in filing the complaint against Biltcliffe.  *Id.*

21       Though the district court and First Circuit initially found Bogan and the
22  officials to be without legislative immunity, the United States Supreme Court
23  overturned these rulings and decisively held that, "[b]ecause the common law
24  accord[s] local legislators the same absolute immunity it accord[s] legislators at other
25  levels of government, and because the rationales for such immunity are fully
26  applicable to local legislators, … local legislators are likewise absolutely immune
27  from suit under § 1983 for their legislative activities."  *Id.* at 49 (citing *Tenney v.*
28  *Brandhove*, 341 U.S. 367, 372 (1951)).

The theory behind legislative immunity is one of public good—for if legislators could be held personally liable for their governmental decisions, no person would choose to take up the mantle of service. *Bogan*, 523 U.S. at 50–51 (citing *Jones v. Loving*, 55 Miss. 109, 111 (1877)).  Moreover, at the local level, civil liability for legislative acts would consume far too much of the time, money, and energy of our often part-time civil servants. *Bogan*, 523 U.S. at 52.  Thus, the rule holds that federal, state, regional, and local government officials cannot be held personally liable for actions taken under their legislative, rather than ministerial or administrative, functions. *Id.* at 50–51.

The *Bogan* Court then held that, even though the City's decision to eliminate a city position was specifically targeted at a Scott-Harris, the subjective intent of a legislator cannot inform whether an act was "legislative" or "administrative." *Id.* at 54.  Instead, the distinction between the two must rest in the "nature of the act, rather than the motive or intent of the official performing it"—and the acts of introducing a budget ordinance or voting on that measure are quintessentially legislative. *Id.* at 54–55.  Even executives (such as the Mayor in *Bogan* or the City Manager at bar) are entitled to legislative immunity when they perform legislative functions.  *See Supreme Ct. of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731–734 (1980); *see also Edwards v. United States*, 286 U.S. 482, 490 (1932) (noting "the legislative character of the President's function in approving or disapproving bills"); *Smiley v. Holm*, 285 U.S. 355, 372–373 (1932) (recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process).

Just as in *Bogan*, the Court finds that the members of a City Council and a City Manager cannot be held liable for their actions in introducing, voting on, and passing a budget resolution.  This Court cannot look to the motivations behind the elimination of the Building Manager position, and should instead focus on the Defendants' actions themselves.  Here, we have a City Manager who introduced a cost-saving measure and a collection of City Council members who voted for that resolution.  Each of these

actions are wholly legislative, and thus Defendants Coroalles, Gaines, Shapiro, Maurer, and Bozajian are immune from suit.  All claims against these Defendants for their role in eliminating Jacobsen's former position, and thus Jacobsen's Second, Third and Fourth Claims are **DISMISSED**.

### ii.  Defendants Parker and Bingham

Defendants Parker and Bingham, however, are not protected by legislative immunity.  This does not mean that Jacobsen's claims against them survive; to the contrary, they, too, are **DISMISSED**.

### a.  John Bingham

Per the City's HR Guidelines, only the Department Head (here, Defendant Parker) had the authority to terminate Jacobsen.  (Compl. ¶¶ 8, 15, 20; Supp. RJN, Ex. 6 at 10, ECF No. 28 (under HR Guidelines, only the administrative head of a department acts as appointing authority, and only appointing authority has power to terminate an employee for cause).)  Therefore, Defendant Bingham, though allegedly involved in the padding of the HR file that led to Jacobsen's dismissal, was not afforded disciplinary authority by the City and thus cannot be liable for the termination for cause.  (*See* Compl. ¶¶ 19, 21.)  Accordingly, Jacobsen's Second, Fourth, and Fifth causes of action as to Defendant Bingham are dismissed with prejudice.

### b.  Robin Parker

As for Defendant Parker, the Court must walk through a more traditional Section 1983 analysis before concluding that Jacobsen's claims against her must also fail.

An individual defendant will come within the purview of Section 1983 where he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that causes the deprivation of which complaint is made."  *Preschooler II v. Clark Cnty. Schl. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).  A defendant's participation in the allegedly violative

conduct must be "integral," and vague and conclusory allegations concerning an officer's participation in the civil rights violation will not suffice.  *See Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002); *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  When alleging a *conspiracy* to violate a plaintiff's constitutional rights under 28 U.S.C. § 1985, the litigant must "state specific facts to support the existence of the claimed conspiracy."  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989).

Jacobsen specifically alleges that Parker deprived him of his Fourteenth Amendment right to due process, his Fifth Amendment right to just compensation for a taking of property, and his First Amendment right to engage in free speech.  (Compl. ¶¶ 104, 107.)  As for Jacobsen's First Claim for relief, which asserts that Parker and her colleagues violated his First, Fifth, and Fourteenth Amendment rights, the Court finds no civil rights violation to remedy.  *Hodge v. Jones*, 31 F.3d 157, 167 (4th Cir. 1994) ("If there is no violation of a federal right, there is no basis for a section 1983 action.")

### 1.  First Amendment

Jacobsen claims that Defendants terminated him in retaliation for his Rebuttal to the Notice of Intent to Discipline, and thus violated his First Amendment freedom. (Compl. ¶¶ 20–24, 26, 107; RJN, Ex. 3.)   Setting aside whether Defendants' termination could be plausibly considered "retaliation" for the Rebuttal, for this claim to survive the Rebuttal would have to touch on matters of public concern, and the Court sees nothing in this document that moves beyond self-preservation.

The Supreme Court has held that government entities may not punish the speech of public employees if it involves matters of public concern.  *Pickering v. Bd. of Ed.*, 391 U.S. 563, 574 (1968); *see also Perry v. Sindermann*, 408 U.S. 593, 587 (1973) (holding that the First Amendment limits the ability of the government to fire or discipline employees because of their protected speech activities).  Speech touches a matter of public concern when it "can be fairly considered to relate to 'any matter of

political, social, or other concern to the community.'"  *Johnson v. Multnomah Cnty., Ore.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting  *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."  *Connick*, 461 U.S. at 147–48 (holding that statements related to the performance of supervisors and policy in a public office did not involve matters of public concern because the speaker was not seeking to inform the public at large).

Here, Jacobsen's Rebuttal is nothing more than a repudiation of his employer's grievances concerning his work product.  The document serves to defend Jacobsen against Parker's attacks, and thus there is nothing in the Rebuttal that rises to the level of public concern.  Just as in *Connick*, this Court looks to the content, form, and context of this Rebuttal and sees only an internal response to a disciplinary letter regarding one's own job performance.  (RJN, Ex. 3.)  *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (noting that "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'") (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

Even assuming Jacobsen's termination constituted retaliation for the Rebuttal letter, with no matter of public concern in dispute there is no First Amendment violation.

## 2.  Fourteenth and Fifth Amendments

At the heart of Jacobsen's suit is his due process claim, but he cannot bring a colorable claim against Parker for this violation.[4]  Jacobsen claims that he has a protected property interest in his continued employment with the City, and therefore any deprivation of that property interest violates his constitutional rights.  (Opp'n 3.)  However, he alleges no facts connecting Parker with the elimination of the Building Engineer position—though Parker may have been the one to fire him without reason,

---

[4] Or against any City Official, *see supra*, Section 1(i).

she did not sit on the City Council and approve the Recommendation to eliminate the now-vacant position.  With only the termination to tie Parker to Jacobsen's injuries, the Court can only assume that Jacobsen's allegations against Parker rest on her supposed violation of his "liberty interest."  (Compl. ¶ 101.)

"The liberty protected by the due process clause … encompasses an individual's freedom to work and earn a living.  Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 & n.12 (1972)).  For a dismissal to implicate an employee's liberty interests, the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities, and those charges must also be published. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 907 (9th Cir. 1993); *see also Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (concluding that charges reflecting on "good name, reputation, honor, and integrity" can trigger a constitutional violation); *Bollow*, 650 F.2d at 1101("Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'") (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1975)).  Moreover, publication must extend beyond other employees.  *Learned v. Bellevue*, 860 F.2d 928, 933 (9th Cir 1988).

Jacobsen does not allege that the reasons for his termination, or any of the accusations found in the Notice of Intent to Discipline, were ever published; nor does he offer any facts to support any post-termination stigma.  Most importantly, Jacobsen was offered both notice *and a name-clearing hearing*—in fact, any stigma created by his meritless termination was erased by the appeal in his favor.  Therefore, Jacobsen has failed to allege that Parker violated of his Fourteenth Amendment liberty interests. //

### 3.  Conspiracy

Jacobsen also claims that Parker, along with her City colleagues, conspired to eliminate the vacant Building Manager position in direct violation of Jacobsen's Fifth and Fourteenth Amendment rights.  (Compl. ¶ 115.)   The Court can summarily dismiss this claim, as (1) Jacobsen suffered no constitutional injury and (2) the Complaint offers no support for this contention other than a bare recitation of the legal standard itself.

Setting aside whether the elimination of the Building Manager Position violated Jacobsen's constitutional rights in an fashion (a notion which the Court rejects), there is no support offered for the claim that Defendants "had no intention of abiding by the Decision [finding Jacobsen's termination to be in error], and agreed to and conspired to Eliminate the Position while the Appeal was pending, and combined and conspired to conceal the fact that Defendants intended to deliberately circumvent the Appeal process."   (*Id.*)   Nowhere in his Complaint is there any discussion of a nefarious agreement amongst the Defendants to deprive Jacobsen of his job or remuneration for lost wages should he prevail on appeal.  Without even a hint of an inside job, Jacobsen cannot maintain his conspiracy claim.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929–30 (9th Cir. 2004) (upholding dismissal of conspiracy claim where complaint is devoid of facts suggesting defendants had any agreement to violate plaintiff's rights).   Jacobsen's Forth Claim for Conspiracy under Section 1985 is hereby **DISMISSED** with prejudice.[5]

//

//

---

[5] While a district court should usually allow a plaintiff to amend the pleadings when a Section 1985 claim is insufficiently pled, *see Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980), the Court need not offer the chance to cure the deficiency where a plaintiff lacks a cognizable claim under Section 1983.  *Olsen*, 363 F.3d at 930 (citing *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989).  As discussed *supra*, Section 1(i)–(ii), Jacobsen has failed to state a constitutional violation, and thus his Section 1983 claims fail.

**B. Claims 5–6: Violations of State Law**

Jacobsen alleges violations of Article I, Section 7 of the California Constitution and California Labor Code Section 1102.5(c). (Compl. ¶¶ 119–133.) However, Jacobsen fails to allege any facts that allow these provisions to provide relief, and as such they, too, are **DISMISSED**.

**1. California Constitution**

Jacobsen claims that Defendants' conduct violated Article I, Section 7 of the California Constitution. (Compl. 26–28.) The pleading makes no reference to the constitutional provision beyond the caption for this cause of action, so the Court is left to its own devices to determine how, if at all, Article I, Section 7 is implicated here.

Article I, Section 7 serves as California's due process corollary, and maintains that "[a] person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws" under the state constitution. However, one may not sue under Article I, Section 7 and recover damages without a companion cause of action that sounds in state statutory or tort law. *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 303 (2002) (finding Article I, Section 7 to preclude actions for damages where no statute or common law tort authorizes a remedy for the alleged violation of a professor's due process "liberty" interest upon his termination). Instead, the only remedies afforded under Article I, Section 7 are declaratory and injunctive. *Id.* at 307. With no tie to an established common law or statutory claim, the Court holds that Jacobsen's due process claim cannot yield money damages and, with no injunctive remedy available,[6] must be dismissed.

*Katzberg* is on point. There, the California Supreme Court completed a thorough historical, legislative, and legal analysis before concluding that Article I, Section 7 "does not support recognition of a constitutional tort cause of action for damages to remedy an asserted violation of the due process 'liberty' interest." *Id.* at 326; *see also Javor v. Taggart*, 98 Cal. App. 4th 795, 807 (2002) ("It is beyond

---

[6] *See infra*, Section C.

question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution." (citing *Carlsbad Aquafarm, Inc. v. State Dep't of Health Servs.*, 83 Cal. App. 4th 809, 815–23 (2000)). Here, Jacobsen's claims rest on his alleged due process violation—and the California Constitution provides no monetary relief for such a deprivation.

### 2. Labor Code

Jacobsen's sole contention here is that Defendants retaliated against him for submitting his Rebuttal to Parker's Notice of Intent to Discipline.  (Opp'n 15, ECF No. 24; Compl. ¶¶ 20, 23.)  Other than matter-of-factly declaring that the Rebuttal contained information on matters of public concern, Jacobsen offers no support for this claim or any legal support for asserting it against the individual Defendants here.

Section 1102.5(c) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in … a violation of or noncompliance with a local, state, or federal rule or regulation."  However, individual supervisors cannot be held liable for retaliatory actions under this law; liability sits on the shoulders of the employer entity, not individuals.  *See Vera v. Con-way Freight, Inc.*, No. CV 15-874 AJW, 2015 WL 1546178, at *1 (C.D. Cal. Apr. 6, 2015) (holding that no individual liability under Section 1102.5 exists); *Conner v. Aviation Serv. of Chevron U.S.A.*, 2014 WL 5768727, *5 (N.D. Cal. Nov. 5, 2014) (same).  Accordingly, this claim as to all individual Defendants must be dismissed.

While the City of Calabasas, as Jacobsen's employer, *may* be held liable under Section 1102.5, Jacobsen has failed to state such a claim.  All Jacobsen can say is that he was engaged in a protected activity when he complained of Defendant's (1) failure "to provide *mandated* evaluations"; and (2) policy of ordering that "work be performed without a written work order."  (Opp'n 15 (emphasis in original).) However, Jacobsen complained of these alleged violations of City policy in his November 2013 Rebuttal, and at that time Section 1102.5 did not protect against

retaliation for refusing to engage in activities that violate local laws—only state or federal laws.  *See* 2003 Cal. Legis. Serv. Ch. 484 (S.B. 777) (West) (Former Section 1102.5(c), as amended on January 1, 2014 stated: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of *state or federal statute*, or a violation or noncompliance with a state or federal rule or regulation." (emphasis added)).

Therefore, because Jacobsen's complaints could not provide the basis of a retaliation action in November 2013, Jacobsen's Sixth Claim is **DISMISSED** in its entirety.

## C. Claim 7: Injunctive Relief

Finally, Jacobsen asks this Court to direct the City Council to reverse its elimination of the Building Engineer position and reinstate Jacobsen—all without apparent regard for the fact that this Court is not a legislative body.  (*See* Compl. ¶ 139.)  Because the federal judiciary cannot tell a municipality how to spend its money, the Court **GRANTS** Defendants' Motion as to this claim.

Defendants argue that any order requiring the City of Calabasas to allocate funds for another Building Manager position specifically for Jacobsen violates the separation of powers.  (Mot. 24–25.)  The Court agrees.  The strict line between judicial and legislative acts has been drawn in the sand for generations, and this Court certainly will not blur this important distinction.  The separation of powers doctrine requires that each branch stay in its own lane, with both state and federal governments bound by its limitations.  *See* Cal. Const. Art. III, § 3 ("The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."); *see also French v. Senate*, 146 Cal. 604, 607 (1905) (finding court involvement in legislative functions to be "expressly forbidden").  Similarly, in *O'Donoghue v. United States*, the Supreme Court held that:

1    If it be important thus to separate the several departments of government
2    and restrict them to the exercise of their appointed powers, it follows, as
3    a logical corollary, equally important, that each department should be
4    kept completely independent of the others—independent ... in the sense
5    that the acts of each shall never be controlled by, or subjected, directly or
6    indirectly, to, the coercive influence of either of the other departments.
7  289 U.S. 516, 530 (1933).

8         The doctrine manifests itself in many ways, several of which are applicable
9  here.  First, court cannot compel a legislative body to act.  *Mandel v. Myers*, 29 Cal.3d
10 531, 551 n.9 (1981) ("[B]y virtue of the separation of powers doctrine courts lack the
11 power to order the Legislature to pass a prescribed legislative act."); *see also Steiner*
12 *v. Super. Ct.*, 50 Cal. App. 4th 1771, 1783 (1996).  Accordingly, no court can compel
13 the City Council of Calabasas to rescind its December 11, 2013, decision eliminating
14 the then-vacant Building Engineer position and order that a city spend its money in a
15 way contrary to its intentions.  (*See* Compl. ¶¶ 39–40.)

16        Furthermore, even if the reasons for the elimination of the position were
17 impure, the separation of powers doctrine limits a court's ability to explore the
18 motivations and thought processes behind the passage of an otherwise lawful law.  *Bd.*
19 *of Supervisors v. Super. Ct.*, 32 Cal. App. 4th 1616, 1616 (1995) (reversing order
20 allowing discovery as to whether legislative board had considered an advisory
21 recommendation before consolidating court services in sheriffs' department); *Banville*
22 *v. Cnty. of Los Angeles*, 180 Cal. App. 2d 563, 570 (1960) ("Under our law the
23 legislative body cannot be forced to enact or amend a zoning ordinance. The courts
24 can declare an action of the Legislature unconstitutional where such action exceeds
25 the limits of the Constitution, but the courts have no means and no power to avoid the
26 effects of non-action").  The reasons behind this rule have found support has far back
27 as the founding of our American judiciary.  *See* U.S. Const., Art. I, § 6.  In *Fletcher v.*
28 *Peck*, Chief Justice Marshall decreed that

[t] may well be doubted how far the validity of a law depends upon the motives of its framers, and how far the particular inducements, operating on members of the supreme sovereign power of a state, to the formation of a contract by that power, are examinable in a court of justice. … If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned.

10 U.S. 87, 130 (1810).   While it remains to be seen whether the City Council eliminated the Building Engineer position without regard to Jacobsen's allegations (or as a means of driving in the final nail in his career with the City), the reasons for this otherwise unobjectionable budgetary decision are beyond this Court's purview.

Finally, the Court notes that the doctrine applies not just to state or federal legislatures, but also to local governing bodies, such as Boards of Supervisors or City Councils, when they act in a legislative capacity.  *Steiner*, 50 Cal. App. 4th at 1785. Governing entities are acting legislatively when their activities involve "planning or enacting legislation," including the revocation of legislation.  *Id.* (citing *Santa Barbara Cnty. Taxpayers Assn. v. Bd. of Supervisors*, 209 Cal. App. 3d 940, 946–947 (1989)).   While of course courts are not completely constrained from intervening in local governance, the instances where judicial actions are appropriate involve *administrative* actions, not legislative ones. *Steiner*, 50 Cal. App. 4th at 1785; s*ee, e.g., Ross v. Super. Ct.*, 19 Cal. 3d 899, 909, n.6 (1977) (supervisors subject to contempt proceeding for failing to carry out court order relating to administrative action).

Here, the City Council's decision to eliminate a Building Engineer position is a legislative, not administrative, act, and thus the Court is powerless and cannot intervene.  At its core, the December 11, 2013, recommendation was the revocation of the legislation that created that Building Engineer position.  *See Santa Barbara Cnty.*

*Taxpayers*, 209 Cal. App. 3d 946–47.  Moreover, even if the Court did not see the recommendation as a revocation, the City's right to create jobs within its control and award benefits to those employees is a legislative function—and therefore the City's decision to reorganize its building maintenance team is likewise legislative.  *Hicks v. Bd. of Supervisors*, 69 Cal. App. 3d 228, 235 (1977) (holding that the "the action of the board of supervisors fixing the number and conditions of employment of county employees, and the preparation and adoption of a county budget are legislative matters over which, when constitutional limits are not exceeded, the judiciary has no control."); *see also Cnty. of Butte v. Super. Ct.*, 176 Cal. App. 3d 693, 698–99 (1985) (holding that the "integrated process of determining the budget of a county and adjusting the number of employees in each county office to conform to the overall spending plan is a legislative function," and a sheriff cannot enjoin the funding allocation for his agency).

The Court is sympathetic to Jacobsen's pleas, but it is simply not equipped to afford the remedy he seeks.  While courts are freely able to order a specific former employee be returned to the desk he was unlawfully denied, no court can order that a job that would not otherwise exist be created for him.  *See, e.g.*, *Hopkins v. Price Waterhouse*, 737 F. Supp. 1202, 1210–11 (D.D.C.), aff'd, 920 F.2d 967 (D.C. Cir. 1990) (ordering defendant to make plaintiff a partner in accounting firm after showing denial of partnership constituted discrimination based on sex).  The Court thinks Jacobsen knows this, too, as he makes no arguments to the contrary in his opposition. (*See* Reply 12.)  The injunctive relief claim is **DISMISSED**.


## V.    MOTION TO STRIKE

As detailed above, no claims survive Defendants' Motion to Dismiss, and therefore there are no claims to strike.  Thus, the Court **DENIES** the Motion to Strike as Moot.

//

//

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss in its entirety, **DENIES** the Motion to Strike as Moot, and instructs the Clerk of Court to close the case.

**IT IS SO ORDERED.**

September 19, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**